**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION**

| | | |
|---|---|---|
| **JARED KIZER,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil No. 1:17-cv-01214-STA-egb** |
| | ) | |
| **PINNACLE FOODS GROUP LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## ORDER DENYING PLAINTIFF'S MOTION TO REMAND, DENYING PLAINTIFF'S MOTION TO AMEND COMPLAINT, AND GRANTING DEFENDANT'S MOTION TO DISMISS

Plaintiff filed this action in the Circuit Court of Madison County, Tennessee, against Defendant Pinnacle Foods Group LLC. Defendant removed the action to this Court with jurisdiction predicated on diversity of citizenship, 28 U.S.C. § 1332. Defendant has filed a motion to dismiss. (ECF No. 9.) Plaintiff has filed a response to Defendant's motion (ECF Nos. 13, 14), and Defendant has filed a reply to the response. (ECF No. 20.) Subsequent to the filing of the motion to dismiss, Plaintiff filed a motion to remand (ECF No. 15) and a motion for leave to file an amended complaint under Fed. R. Civ. P. 15(a)(2) if the motion to remand is denied. (ECF No. 16.) Defendant has responded to the motion to remand. (ECF Nos. 17 – 19.) For the reasons set forth below, Plaintiff's motions to remand and for leave to file an amended complaint are **DENIED**, and Defendant's motion to dismiss is **GRANTED**.

<u>Plaintiff's Motion to Remand</u>

A defendant may remove any civil action "of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). Once a case is removed, a plaintiff may bring a motion to remand under 28 U.S.C. § 1447(c). "[R]emoval statutes are to be narrowly construed." *Long v. Bando Mfg. of Am., Inc.*, 201 F.3d 754, 757 (6th Cir. 2000). Therefore, "all doubts as to the propriety of removal are resolved in favor of remand." *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999).

Defendant has based its removal on 28 U.S.C. § 1332. Pursuant to 28 U.S.C. § 1332(a), federal courts have jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different States[.]" There must be complete diversity between the parties, i.e., "diversity jurisdiction does not exist unless each defendant is a citizen of a different state from each plaintiff." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978). Here, there is no dispute that the amount in controversy exceeds $75,000. However, Plaintiff contends that complete diversity does not exist between the parties, thus necessitating a remand to state court.

According to Plaintiff, Defendant's Jackson, Tennessee, plant is its principal place of business and causes Defendant to be a citizen of Tennessee for diversity purposes. Plaintiff reasons that Defendant's principal place of business is in Tennessee because (1) its plant is located in Tennessee; (2) Plaintiff's injury occurred at the Tennessee plant; (3) Defendant reported the injury to the State of Tennessee and, therefore, subjected itself to the laws of Tennessee; (4) the investigation occurred in Tennessee; and (5) the documents sent by the Tennessee Occupational Safety and Health Administration ("TOSHA") are addressed to Defendant's Jackson, Tennessee address. Defendant has responded that the Court must use a

"never center" test as opposed to a "business activities" test as set forth in *Hertz Corp. v. Friend*, 599 U.S. 77 (2010), to determine its citizenship. The Court finds Defendant's argument to be meritorious.

Defendant has attached to its response the declaration of Kelley Maggs, executive vice president, secretary, and general counsel of Pinnacle Foods, Inc. (ECF No. 18.) The declaration states as follows. Pinnacle Foods, Inc., is a manufacturer and warehouser of food products. It operates manufacturing plants and warehouse facilities in Tennessee, Washington, Wisconsin, Iowa, Michigan, Arkansas, Minnesota, Illinois, Pennsylvania, and Maryland. The business headquarters of Pinnacle Foods, Inc., is located in Parsippany, New Jersey. Its executive leadership and officers are located there, and from there they direct, control, and coordinate business activities and determine overall corporate business strategy. Its overall financial management and corporate accounting functions are centralized in Parsippany, New Jersey.

The declaration further states that Defendant Pinnacle Foods Group LLC is a limited liability company organized under Delaware law. Its sole member is Pinnacle Foods Finance LLC, also a Delaware limited liability company. The sole member of Pinnacle Foods Finance LLC is a holding company, Peak Finance Holdings LLC, also a Delaware limited liability company. The sole member of Peak Finance Holdings LLC is its holding company, Pinnacle Foods, Inc. Pinnacle Foods, Inc., is a Delaware corporation. Each limited liability company in the ownership chain of Defendant Pinnacle Foods Group LLC is headquartered in Parsippany, New Jersey, as is its holding company, Pinnacle Foods Inc. *See also* Declaration of Eve Dyatlova (ECF No. 2.) (accord).

To determine whether diversity of citizenship requirements under § 1332 have been met, the membership of each limited liability company is examined. *See Delay v. Rosenthal Collins*

*Group*, 585 F.3d 1003, 1005 (6th Cir. 2009) (joining "every other circuit that has addressed this issue" and holding that "a limited liability company has the citizenship of each of its members"). When businesses are organized through a chain of limited liability holding companies, as opposed to when a holding company is the sole member of a limited liability company, the court focuses on the defendant's ultimate holding company, which in this case is Pinnacle Foods, Inc. *See, Delphi Automotive Systems v. United Plastics, Inc.*, 418 F. App'x 374, 378-79 (6th Cir. 2011).

Under 28 U.S.C. § 1332(c)(1), a corporation is deemed to be a citizen of every state where it has been incorporated. Here, the record shows that Pinnacle Foods, Inc., is a corporation organized under the laws of Delaware. Therefore, it is a citizen of the State of Delaware because of its incorporation there. A corporation is also deemed a citizen of the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1) (providing that a corporation is a citizen of potentially two states - the state where it is incorporated and the state where its principal place of business is located). Defendant asserts that the principal place of business of Pinnacle Foods, Inc., is Parsippany, New Jersey.

A corporation's principal place of business for diversity jurisdiction purposes is its "nerve center." *Hertz Corp.*, 599 U.S. at 93. The Supreme Court has rejected a "business activities" test because "a corporation may have several plants, many sales locations, and employees located in many different places." *Id.* at 95. The Supreme Court concluded that a corporation's "principal place of business" is the place where a corporation's officers direct, control and coordinate the corporation's activities. Its "nerve center" is the center of its overall direction, control and coordination. *Id.* at 96. Usually the nerve center is the place where the corporation

maintains its headquarters, and it is a single place. *Id.* at 93, 94. Under the "nerve center" test, the Court finds that the principal place of business of Pinnacle Foods Inc., is in New Jersey.

Thus, for purposes of determining diversity under 28 U.S.C. § 1332(c)(1), Defendant Pinnacle Foods Group LLC is a citizen of both Delaware where its holding company, Pinnacle Foods Inc., is incorporated and New Jersey, where it maintains its principal place of business despite Defendant's business activities in Tennessee. *See Hertz*, 559 U.S. at 96 ("[I]f the bulk of a company's business activities visible to the public take place in New Jersey, while its top officers direct those activities just across the river in New York, the 'principal place of business' is New York.").

Since Plaintiff is a citizen of Tennessee, complete diversity exists between Plaintiff and Defendant, and this Court has subject matter jurisdiction over the action. Accordingly, Plaintiff's motion to remand is denied.

<u>Plaintiff's Motion to Amend</u>

Plaintiff seeks leave to amend his complaint if his motion to remand is denied. Rule 15 of the Federal Rules of Civil Procedure governs amended and supplemental pleadings. Subsection (a)(1), entitled "Amendments Before Trial," provides:

> [a] party may amend its pleading once as a matter of course within:
>
> (A) 21 days after serving it, or
>
> (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

Fed. R. Civ. P. 15(a)(1). Plaintiff's motion was filed on December 15, 2017, which was more than twenty-one days after the filing of Defendant's motion to dismiss on November 22, 2017. Therefore, under Rule 15, Plaintiff cannot amend his complaint as of right and, instead, must

seek the Court's permission other Rule 15(a)(2) ("In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave.")

Plaintiff has not submitted a proposed order with his motion nor has he filed a certificate of consultation as required by the Local Rules of this Court. *See* LR 7.2 (a)(1)(A) and (B). "Failure to attach an accompanying certificate of consultation may be deemed good grounds for denying the motion." LR 7.2 (a)(1)(B). Nor did Plaintiff submit a supporting memorandum with his motion as required by Local Rule 7.2(a)(1) ("The Clerk shall accept for filing only those motions in civil cases that include or are accompanied by a supporting memorandum of facts and law…..") Accordingly, the motion to amend is denied on the ground that he failed to comply with the Local Rules.

Additionally, Plaintiff did not attach a copy of the proposed amendment to his motion. "Normally, a party seeking an amendment should attach a copy of the amended complaint." *Kuyat v. BioMimetic Therapeutics, Inc.*, 747 F.3d 435, 444 (6th Cir. 2014) (citation omitted). *See also Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002) ("To be sure, the far better practice would have been for the plaintiffs to tender a second amended complaint with their objections to the magistrate's report, instead of only requesting leave to amend.") Furthermore, the motion does not state in what aspects the complaint would be amended. Instead, Plaintiff's motion merely states that he seeks to amend his original complaint "as justice so requires."[1] (Mot. p. 1, ECF No. 16.) Therefore, the Court cannot determine if the proposed amendment would "advance additional claims, join additional parties, or otherwise put the defendants on notice that they will have to defend against additional claims," *CGH Transp., Inc. v. Quebecor World, Inc.*, 261 F. App'x 817, 824 (6th Cir. 2008), or if the amendment would withstand a Rule

---

[1] Rule 15(a)(2) under which Plaintiff has filed his motion to amend states that "[t]he court should freely give leave when justice so requires."

12(b)(6) motion to dismiss. *See Thiokol Corp. v. Dept. of Treasury, State of Mich., Revenue Div.*, 987 F.2d 376, 382-83 (6th Cir. 1993). Because the Court cannot determine if the proposed amendment contains a "short and plain statement showing that [Plaintiff] is entitled to relief," Fed. R. Civ. P. 8(a)(2), the motion to amend is denied on this ground also.

<u>Defendant's Motion to Dismiss</u>

A defendant may move to dismiss a claim for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). When considering a Rule 12(b)(6) motion, the court must treat all of the well-pleaded allegations of the pleadings as true and construe all of the allegations in the light most favorable to the non-moving party. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Saylor v. Parker Seal Co.*, 975 F.2d 252, 254 (6th Cir. 1992). Legal conclusions and unwarranted factual inferences, however, need not be accepted as true. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987) (citing *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir. 1976); *Davis H. Elliot Co. v. Caribbean Utilities Co.*, 513 F.2d 1176, 1182 (6th Cir. 1975); and *Blackburn v. Fisk Univ.*, 443 F.2d 121, 124 (6th Cir. 1971)). "To avoid dismissal under Rule 12(b)(6), a complaint must contain either direct or inferential allegations with respect to all the material elements of the claim." *Wittstock v. Mark A. Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003).

A complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Reilly v. Vadlamudi*, 680 F.3d 617, 622 (6th Cir. 2012) (quoting *Twombly*, 550 U.S. at 555).

In order to survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

The complaint (ECF No. 1-1) in this case alleges as follows. Plaintiff was at all times relevant an employee of Express Employment. He was directed by Express Employment to report to Defendant's plant for a temporary job assignment. While on Defendant's premises, he was told to report to a certain building, and, while there, he attempted "to operate a fish processing machine and the guarding on the filler machine was not adequately maintained." (*Id.* at p. 8.) As a result, he "suffered an amputation." (*Id.*) Plaintiff contends that he was not informed of the risks involved with operating the machinery and received insufficient training and supervision from Defendant. Plaintiff alleges that permanent employees receive training not provided to temporary workers. He further alleges that Defendant "has an Employee Right to Know Program – Hazard Communication [which] states that training shall be provided for all new employees before employees are assigned or reassigned duties which may cause exposure to hazardous substances [but Plaintiff] did not receive this training." (*Id.* at p. 10.)

According to Plaintiff, Defendant violated the standards and/or workplace rules under TOSHA. Defendant was cited by TOSHA and fined for those violations. Plaintiff alleges that there were two amputations within the same month at Defendant's plant.

Plaintiff has brought a negligence claim and an intentional tort claim against Defendant.

Defendant has moved to dismiss the complaint on the ground that at the time of Plaintiff's accident it was the statutory employer or co-employer of Plaintiff, and, therefore, it is immune from suit under the exclusivity provision of the Tennessee Workers' Compensation Act. That statute provides:

> The rights and remedies granted to an employee subject to this chapter, on account of personal injury or death by accident ... shall exclude all other rights and remedies of such employee, such employee's personal representative, dependents or next of kin, at common law or otherwise, on account of the injury or death.

Tenn. Code Ann. § 50-6-108(a). This provision has been interpreted to bar tort claims against an employer that arise out of work-related injuries unless the employer committed an intentional tort against the employee. *See Valencia v. Freeland and Lemm Constr. Co.*, 108 S.W.3d 239, 242-43 (Tenn. 2003).

It is well settled under Tennessee law that "an employee of a temporary manpower service is considered also to be an employee of the company to which the employee is assigned, for workers' compensation purposes." *Stephens v. Home Depot U.S.A., Inc.*, 529 S.W.3d 63, 75 (Tenn. Ct. App. 2016), *appeal denied* (Apr. 13, 2017) (quoting *Abbott v. Klote Int'l Corp.*, 1999 WL 172646 at *3 (Tenn. Ct. App. Mar. 24, 1999), *perm. app. denied* (Tenn. Sept. 13, 1999)). Plaintiff's argument that he was not an employee of Defendant because there was no express contract and no implied contract of employment between himself and Defendant fails. As explained in *Stephens*,

> When a temporary worker accepts employment and enters into an employment agreement with a temporary agency, he or she "necessarily consents to work for the clients of the agency" and enters into "an implied contract with a special employer." *Tedder v. Union Planters Corp.*, No. W1999-01971-COA-R3-CV, 2001 WL 589139, at *2 (Tenn. Ct. App. May 29, 2001) (concluding that an employee of a temporary employment agency was a co-employee of the bank where she was assigned to work, pursuant to the loaned servant doctrine, and therefore, her exclusive remedy against the bank was under the workers'

> compensation statutes); *see also Bennett* [*v. Mid–S. Terminals Corp.*, 660 S.W.2d 799, 801-02 (Tenn. Ct. App. 1983)] (finding the loaned servant doctrine applicable to an employee of a supplier of temporary manpower).

*Stephens*, 529 S.W.3d at 75.

In the present case, as an employee of Express Employment, Plaintiff was directed to report to Defendant's manufacturing plant for performance of a temporary job assignment operating a fish processing machine as part of Defendant's manufacturing process. The fact that he entered into this employment arrangement constitutes a general consent to work for Defendant as a loaned employee for purposes of workers' compensation protection. Thus, Defendant became his co-employer. Because it is liable for workers' compensation, Defendant is entitled to the exclusive remedy defense of Tennessee's workers' compensation laws on Plaintiff's negligence claim.

Tennessee's workers' compensation exclusivity provision provides an exception for intentional torts. The Tennessee Supreme Court has held that, to meet this exception, the employee must "show that the employer actually intended to injure the employee. Proof of gross or criminal negligence is insufficient in this regard." *Valencia*, 108 S.W.3d at 243. Thus, to survive a motion to dismiss, the complaint must "allege facts showing that the employer actually intended to injure the employee." *Id.* In the absence of "actual intent," the plaintiff is limited to his workers' compensation remedies. *Id.* at 240.

In *Valencia*, a construction worker was working in an open trench, which collapsed and caused his death. *Id.* at 241. Safety regulations required that companies using construction trenches either slope the sides of the trenches or use "trench-boxes" to ensure that the trenches did not collapse. The employer had previously been cited for violating these regulations, but, in spite of the citations, it continued to construct trenches that were neither sloped nor reinforced.

The employer also committed other safety violations, and the collapse that killed the worker was "likely" a result of these safety violations. The worker's next of kin filed suit against the employer, asserting claims for intentional misrepresentation, negligence, strict liability, wrongful death, and assault. Despite the allegation in the complaint that the employer "acted with the 'actual intent' to injure [the worker]," the trial court granted the employer's motion to dismiss the tort claims, finding that, although the complaint "indicated that the employer's conduct was 'substantially certain' to cause death ... the employer's conduct was not indicative of an 'actual intent' to injure [the worker]." *Id.*

On appeal, the Tennessee Supreme Court rejected the plaintiff's argument that "actual intent" should be broadly interpreted to include an employer's conduct that was "substantially certain" to cause injury or death such as committing safety violations. *Id.* at 243. "Even if the alleged conduct goes beyond aggravated negligence, and includes such elements as knowingly permitting a hazardous work condition to exist [or] knowingly ordering claimant to perform an extremely dangerous job, ... this still falls short of the kind of actual intention to injure that robs the injury of accidental character." *Id.* at 242.

In the present case, Plaintiff's allegations that he was inadequately trained and that Defendant's violations of safety standards resulted in his injury do not meet Tennessee's requirement of alleging an actual intention to harm the employee in order to fall into the intentional tort exception to the exclusivity provision. Nor does his allegation that Defendant committed fraud by not revealing the dangerous condition of the machine that injured him meet the exception. "To permit a plaintiff otherwise covered by workers' compensation to pursue common law claims for gross negligence or willful misconduct simply by pleading them in terms of fraudulent concealment would be to circumvent completely the exclusivity provision of the

workers' compensation scheme for all torts involving greater culpability than simple negligence."

*Coffey v. Foamex L.P.*, 2 F.3d 157, 161 (6th Cir. 1993)

Accordingly, the Court finds that both Plaintiff's negligence and intentional tort claims are barred by Tennessee Workers' Compensation Act, and Defendant's motion to dismiss is granted.

In summary, Plaintiff's motion to remand and motion for leave to file an amended complaint are **DENIED**.  Defendant's motion to dismiss is **GRANTED**.  The action is hereby dismissed with prejudice, and judgment will be entered in favor of Defendant.

**IT IS SO ORDERED.**

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
CHIEF UNITED STATES DISTRICT JUDGE

Date:  January 10, 2018.